UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLAN COUGLE                                    CIVIL ACTION

VERSUS                                          NO. 19-9257

BERKSHIRE LIFE INSURANCE               SECTION "R" (3)
COMPANY OF AMERICA AND
AMERITAS LIFE INSURANCE


## ORDER AND REASONS

Before the Court are defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]  Because plaintiff cannot state a claim under his various causes of action, the Court grants the defendants' motions.


## I.    BACKGROUND

This action arises from the denial of insurance benefits.  Christopher Cougle suffers from delusional disorder with paranoid and grandiose features, a severe psychiatric illness which interferes with his judgment and perception of reality.[2]  Cougle was insured under three individual insurance

---

[1]    R. Doc. 10; R. Doc. 12.
[2]    R. Doc. 1-2 at 3 ¶¶ 6-7.

disability policies, two issued by the Berkshire Life Insurance Company of America and one issued by Ameritas Life Insurance Company.[3] In December 2016, Cougle made a claim for long-term disability with both Berkshire and Ameritas.[4] Both insurance companies accepted Cougle's claim, and began making payments under the insurance policies.[5]

After twenty-four months, in January 2019, both defendants discontinued payments.[6] When Cougle demanded continued payment, both companies responded that their respective insurance policies covered only twenty-four months for Cougle's psychiatric illness.[7] Ameritas asserts that such twenty-four month limitations for psychiatric illnesses are commonly used throughout the country in individual insurance disability policies.[8]

Allen Cougle, the appointed curator of Christopher Cougle, brought this suit in state court against Berkshire and Ameritas, arguing that the insurance companies breached the terms of their policies and violated a number of Louisiana laws.[9] On April 10, 2019, the insurance companies

---

[3] *Id.* at 3 ¶ 8.
[4] *Id.*
[5] *Id.* at 3 ¶ 9.
[6] *Id.* at 3 ¶ 10.
[7] *Id.* at 3-4 ¶¶ 11-12; *see also id.* at 15-17.
[8] R. Doc. 12-1 at 3.
[9] R. Doc. 1-2.

removed the suit to federal court.[10]  Both insurance companies then moved to dismiss Cougle's complaint for failure to state a claim upon which relief may be granted.[11]

## II.    LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The Court must resolve doubts as to the sufficiency of the claim in plaintiff's favor.  *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  But to survive a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim must be dismissed if there are insufficient factual allegations to raise the right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).  The

---

[10]     R. Doc. 1.
[11]     R. Doc. 10; R. Doc. 12.

Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.*

## III. DISCUSSION

Plaintiff's claims largely hinge on his allegations that the policies violate certain provisions of the Louisiana Insurance Code and therefore should be reformed to conform with those provisions. Plaintiff also asserts claims under the Louisiana Human Rights Act and the Louisiana Unfair Trade Practices Act, as well as a breach of contract claim, in which he appears to assert that after reformation, the insurance companies would be in breach. Finally, plaintiff asserts a declaratory judgment claim, which is contingent on the viability of his other claims. The Court addresses each claim in turn.

As an initial matter, plaintiff argues that because this case was removed from a Louisiana state court, Louisiana's pleading standards—rather than

federal pleading standards—should be used to analyze his claims. But when a case is removed to federal court, the law is clear that federal pleading requirements, rather than state pleading requirements, apply. *See Genella v. Renaissance Media*, 115 Fed. App'x 650, 652-53 (5th Cir. 2004) ("While this case originated in state court and was later removed to federal court . . . pleadings must nevertheless conform to federal pleading requirements."); *see also* Fed. R. Civ. P. 81(c) ("These [Federal Rules of Civil Procedure] apply to a civil action after it is removed from a state court.").

The cases plaintiff cites to are inapposite, as they relate to the application of the standard only in the fraudulent joinder context. And in the Fifth Circuit, courts apply federal pleading standards even when addressing fraudulent joinder in a case that has been removed. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207-08 (5th Cir. 2016) (holding that a federal court must apply the federal pleading standard to state fraudulent joinder claims). Therefore, the Court will apply the federal pleading standard in analyzing the sufficiency of plaintiff's claims.

### A.    Reformation

Plaintiff asks that the Court reform the insurance policies to remedy alleged violations of Louisiana law. Louisiana law explicitly allows a court to

reform a policy which violates the Louisiana Insurance Code. The Louisiana Insurance Code states that "[a]ny insurance policy . . . issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this Code, shall not be rendered invalid, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with this Code." La. R.S. 22:880. The Louisiana Supreme Court has also approved reformations of insurance polices to make them comply with the Insurance Code. *See Rudloff v. La. Health Servs. & Indem. Co.*, 385 So. 2d 767, 770 (La. 1979) (reforming a policy to comply with the Louisiana Insurance Code). And the policies at issue here state that to the extent they violate a state law, the policies are amended so as to be in conformity with the minimum requirements of the law.[12] Here, plaintiff requests reformation based on a variety of statutes, which are addressed in turn below.

### 1.    *La. R.S. 22:1043*

Plaintiff alleges that defendants' policies violate La. R.S. 22:1043, which states: "Any hospital, health, or medical expense insurance policy . . . shall include benefits payable for the treatment of severe mental illness

---

[12]    *See* R. Doc. 10-4 at 16 (Berkshire Policy Z1347920), 65 (Berkshire Policy Z1347930); R. Doc. 12-3 at 10 (Ameritas Policy).

under the same circumstances and conditions or greater as benefits are paid under those policies . . . for all other diagnoses, illnesses, or accidents." La. R.S. 22:1043(A)(1)(a). This statute is inapplicable here, as the policies at issue are excluded from this prohibition.

La. R.S. 22:1043 excludes individual health insurance policies or contracts like the ones at issue here. The statute states: "The provisions of this Section shall not apply to health insurance individual policies or contracts; limited benefit health insurance policies or contracts; and short term health insurance policies or contracts." La. R.S. 22:1043(A)(3)(b). The Berkshire and Ameritas policies are limited benefit health insurance and individual health policies, and are therefore excluded from the statute's prohibition on providing different benefits for mental illness.

Plaintiff argues that the relevant policies are health insurance and are not "limited benefit health insurance policies." But this argument is without merit. Plaintiff first seems to argue that limited benefit health insurance policies cannot include disability insurance, and therefore any disability insurance must be health insurance. But the statutory definition of limited benefit health insurance policy specifically includes disability insurance. *See* La. R.S. 22:47(2)(c) (defining limited benefit insurance as a "[h]ealth and

accident insurance policy designed, advertised, and marketed to supplement major medical insurance that includes . . . disability income.").

Plaintiff simply ignores that La. R.S. 22:1043 also specifically excludes "health insurance individual policies or contracts" and is designed to apply only to group plans. *See* La. R.S. 22:1043(A)(3)(b) ("The provisions of this Section shall not apply to health insurance *individual policies or contracts. . . .*") (emphasis added); *see also id.* 22:1043(A)(3)(a) ("The provisions of this section shall apply only to group, blanket, and association policies."). Plaintiff does not contest that the relevant policies were individual policies. And because the policies at issue are explicitly excluded under the statute, Cougle has no claim for reformation under La. R.S. 22:1043.

## 2. *La. R.S. 22:990*

Cougle also alleges that defendants violate La. R.S. 22:990. That statute sets the boundaries for what an insurance policy may define as "total disability." As relevant here, it states:

> A general definition of total disability in such a policy shall not be more restrictive than one requiring the individual to be totally disabled from engaging in any employment or occupation for which he is, or becomes, qualified by reason of education, training, or experience and which provides him with substantially the same earning capacity as his former earning capacity prior to the start of the disability.

La. R.S. 22:990(C).  The Berkshire policies' definition of "Total Disability" reads:

> Total Disability means that, because of sickness or injury, you are not able to perform the material and substantial duties of your occupation.  Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled.  You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation.[13]

And the Ameritas policy reads:  "Total Disability . . . means that, solely due to sickness or injury, you are not able to perform the material and substantial duties of your occupation."[14]

Cougle's argument does not seem to be that these general definitions of "total disability" in the policies are illegally limiting as they are written.  Rather, Cougle argues that the presence of a separate clause in the policies, which limits benefits for mental or substance abuse disorders to twenty-four months, acts as a limit on the definition of "total disability," and thus is impermissible under La. R.S. 22:990.

Cougle's argument fails.  La. R.S. 22:990 is designed to apply to the *general* definitions of "Total Disability" in a policy.  And plaintiff does not

---

[13]   R. Doc. 10-4 at 11 (Policy Z1347920); *Id.* at 58 (Policy X1347930).
[14]   R. Doc. 12-3 at 4 (emphasis removed).

argue that those general definitions are insuffcently broad. La. R.S. 22:990 does not speak to other limitations on the application of the definition of "Total Disability." Significantly, as discussed above, another portion of the Louisiana Insurance Code speaks specifically to limitations for mental and substance abuse disorders. *See* La. R.S. 1043. And that statute specifically excludes individual disability policies from its prohibition on limitations on mental health disorder benefits. *See id.* 1043(A)(3)(b). When two statutes on a similar subject matter conflict "the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *Oubre v. La. Citizens Fair Plan*, 79 So. 3d 987, 997 (La. 2011). Here, La. R.S. 1043 directly addresses the distinct treatment of mental health disorders, while La. R.S. 22:990, if it does so at all, does so only generally and indirectly. Because it is more specific, La. R.S. 1043, and its exception regarding limitations on mental health benefits, must apply.

Moreover, the exclusion in La. R.S. 1043(A)(3)(b) would be meaningless if La. R.S. 22:990 forbade individual or limited benefit insurance policies from providing less beneficial treatment of mental health disorders than other conditions. And it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void,

or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (citing *Duncan v. Walker,* 533 U.S. 167, 174 (2001)); *see also Oubre*, 79 So. 3d at 987 ("[C]ourts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found."). To read La. R.S. 22:990 as broadly as Cougle requests would render La. R.S. 22:34(A)(3)(b) meaningless, and therefore violate this "cardinal principle of statutory construction." *TRW Inc.*, 534 U.S. at 31. This would be improper under Louisiana law.

The case plaintiff cites to argue that the twenty-four-month limitation necessarily violates La. R.S. 22:990, *Scott v. Unum Life Insurance Company of America*, 80 So. 3d 740 (La. App. 2 Cir. 2011), does not require the opposite result. In that case, the Louisiana Court of Appeals for the Second Circuit affirmed the trial court's decision that the policy at issue violated La. R.S. 22:990 because the insurance company had construed the policies to deny that the plaintiff was totally disabled on the grounds that he could still perform work in certain alternative occupations, when these alternative occupations paid less than plaintiff's former job. The Court found that the

policy's definition of "totally disabled," as construed by defendants, was impermissibly circumscribed.  *Scott*, 80 So. 3d at 752.

That analysis is inapposite here.  Cougle makes no argument that the general definition of "Total Disability" in the Berkshire or Ameritas policies are construed in a similarly impermissible manner.  Moreover, *Scott* did not deal with the 24-month limitations based on mental disabilities that Cougle takes issue with.  The Court therefore dismisses Cougle's claim for reformation pursuant to La. R.S. 22:990.

### 3.  *La. R.S. 22:34*

Cougle also alleges that defendants' policies violate La. R.S. 22:34. That statute states, in relevant part, that

> No insurer shall make or permit any unfair discrimination . . . between insureds or subjects of insurance having substantially like insuring risk, and exposure factors, or expense elements, in the terms or conditions of any insurance contract . . . or in the benefits payable or in any other rights or privileges accruing thereunder.

La. R.S. 22:34.  Cougle argues that he can maintain a relevant claim for reformation under this statute because he pleads that the insurance companies pay benefits for psychiatric disorders "at a lesser benefit duration, than for other mental health conditions such as dementia or Alzheimer's Disease that have the same or similar results and functional effects and a

lesser benefit duration than other physical diagnoses, illnesses, or conditions that have the same or similar functional effects."[15]

At its broadest, Cougle's argument is that La. R.S. 22:34 prohibits individual or limited benefit insurance policies from treating physical and mental illnesses differently. But, as with La. R.S. 22:990, this argument flies in the face of La. R.S. 1043(A)(3)(b). The distinction between delusional disorder and physical conditions is barred by the clear terms of La. R.S. 1043(A)(1)(a). And as discussed above, individual disability policies are explicitly excluded from that prohibition. *See* La. R.S. 1043(A)(3)(b). Such an exclusion would be rendered meaningless if La. R.S. 22:34 was read so broadly as to apply here. *See TRW Inc.*, 534 U.S. at 31 (stating that statutes should be construed so that no clause is superfluous or insignificant). La. R.S. 22:1043 also more specifically addresses policies distinguishing between mental and physical illnesses. Because it is more specific, La. R.S. 22:1043, and its exception regarding limitations on mental health benefits must apply. *See Oubre*, 79 So. 3d 987 at 997 (holding that more specific statutes govern over more general ones).

To the extent that Cougle also argues that the policies impermissibly differentiate between two mental conditions that have similar functional

---

effects, this argument also fails because Cougle fails to state a claim. To survive a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Cougle does not do so here.

Cougle correctly states that the insurance policies apply the twenty-four-month limitation to mental illnesses, such as delusional disorder, and not to other illnesses that may share some similar symptoms, such as Alzheimer's Disease. But this distinction is based on classifications in the Diagnostic and Statistical Manual of Mental Disorders, also known as the "DSM." The DSM is "a classification of mental disorders and associated criteria" that is "a standard reference for clinical practice in the mental health field."[16] The DSM draws a distinction between conditions of physical or biological origin—such as physical trauma, infections, or a form of senility or irreversible dementia such as Alzheimer's Disease—and nonorganic mental disorders, such as delusional disorder.

Plaintiff's bald assertion that his condition has "the same or similar results and functional effects" as conditions that are not subject to the

---

[16] Diagnostic and Statistical Manual of Mental Disorders xli (5th ed. 2013).

twenty-four-month limitation, such as Alzheimer's Disease, is not sufficient to state a claim. Indeed, plaintiff does not even allege that his condition has "like insuring risk, and exposure factors, or expense elements" as conditions such as Alzheimer's Disease or dementia, which is what is required to violate the statute. *See* La. R.S. 22:34.

Moreover, the DSM itself—the basis for the distinction about which Cougle complains—offers reasons why the insuring risk of delusional disorder and disorders such as Alzheimer's Disease are different. For example, the DSM notes that prevalence of Alzheimer's Disease "increases steeply with age" after age sixty,[17] but that delusional disorder "can occur in younger age groups."[18] Insurance risk and expense factors for disorders that are more likely to occur later in life are less than those that occur earlier in life. Because Cougle does not plausibly state a claim that his disorder has like insuring risk, exposure factors, or expense elements as other diseases such as Alzheimer's Disease, the Court dismisses Cougle's claim for reformation under La. R.S. 22:34.

---

[17] Diagnostic and Statistical Manual of Mental Disorders 608 (5th ed. 2013).

[18] *Id.* at 93.

## B.  Discrimination

Cougle also brings a claim for discrimination under the Louisiana Human Rights Act.  *See* La. R.S. 51:2231, *et seq*.  As relevant here, that statute states that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation . . . on the grounds of . . . disability."  La. R.S. 51:2247.  "Disability" is then defined as "a physical or mental impairment that substantially limits one or more of the major life activities of the individual."  La. R.S. 51:2232(3)(a).  The statute goes on to define "mental impairment" as "any mental or psychological disorder, such as . . . emotional or mental illness."  *Id*. 51:2232(3)(a)(ii).

Whether the LHRA is applicable turns on two issues.  First, the parties debate whether the insurance was sold in a "place of public accommodation" as defined by the statute.  Second, the parties similarly dispute whether the practice at issue here constitutes a "discriminatory practice" as defined by the statute.  There is a dearth of Louisiana case law on both questions.  Neither party has cited a case in which a Louisiana court applied the LHRA in the insurance context, nor can the Court identify one.  Indeed, the one case defendants point to, *Franklin v. Arc of East Ascension*, is inapposite, as that case decided only that the LHRA is not applicable to employment

discrimination. It specifically noted that "the LHRA prohibits discrimination in public accommodations." No. 16-684, 2017 WL 722599, *3 (M.D. La. Feb. 23, 2017). Because of the lack of case law on point in Louisiana, Cougle asks the Court to look to an analogous statute, the American with Disabilities Act, 42 U.S.C. § 12182, to determine the whether the terms "discriminatory practice" and "public accommodation" are expansive enough to cover the actions of the insurance companies here. Other courts have looked to the ADA when interpreting the scope of the LHRA. *See, e.g.*, *Smith v. Board of Comm. of La. Stadium and Exposition Dist.*, 385 F. Supp. 3d 491, 506-08 (E.D. La. 2019). As the Court finds this appropriate, the Court will examine the LHRA issues through the lens of the ADA.

### 1. *Public Accommodation*

"Place of public accommodation" is defined in the LHRA as "any place, store, or other establishment . . . which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public." La. R.S. 51:2232(9). The ADA similarly prohibits discrimination in public accommodations against those with disabilities. *See* 42 U.S.C. § 12182 ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation. . . .").  The ADA defines "public accommodation" differently and more narrowly than the LHRA, listing specific places such as hotels and restaurants.  *See id.* § 12181(7)(A)-(B).  Notably, unlike the LHRA, the ADA specifically includes insurance offices as public accommodations.  *Id.* § 12181(7)(F).

The primary dispute between the parties on this issue seems to deal with whether insurance that is not purchased at a physical establishment can still be considered subject to the laws prohibiting discrimination in public accommodations.  Indeed, a number of the cases cited by the parties go to this issue.  *See, e.g.*, *Winslow v. IDS Life Ins. Co.*, 29 F. Supp. 2d 557, 561-63 (D. Minn. 1998) (holding that the phrase "public accommodations" is not limited to access to actual physical structures, but also covers access to insurance policies offered by public accommodations); *Carparts Dist. Cen., Inc. v. Auto. Wholesaler's Ass'n. of New England*, 37 F. 3d 12, 18-20 (1st Cir. 1994) (holding the same).

Whatever arguments can be made about whether physical access is necessary to make an establishment, including an insurance office, a "public accommodation" under the ADA, they are of no moment here.  In the first paragraph of his complaint, Cougle alleges that he obtained the policies

"from an insurance agent *at a physical business establishment* located in the State of Louisiana offering insurance services to the general public on behalf of defendants."[19] The Court must accept as true plaintiff's allegations in his complaint that he purchased the relevant policies from an insurance agent at a physical business establishment. Therefore, the Court need not address whether purchasing insurance policies other than at a physical establishment would violate the ADA or the LHRA.

Moreover, the Court finds that the LHRA's definition of "public accommodation" includes insurance offices, such as the one where Cougle purchased the policies at issue. Although the LHRA does not explicitly list insurance offices, as the ADA does, the general definition of "public accommodation" under the Louisiana law is broader than under the ADA's. Specifically, such an insurance office is certainly a place "which solicits or accepts the patronage or trade of the general public." La. R.S. 51:2232(9). The Court therefore finds that Cougle purchased the insurance policies from a "public accommodation" within the meaning of the LHRA.

### 2.    *Discriminatory Practice*

That plaintiff purchased the insurance policies from a public accommodation does not necessarily entitle him to relief. Defendants must

---

[19]      R. Doc. 1-2 at 2 ¶ 1 (emphasis added).

also have engaged in a "discriminatory practice" that denied "an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation." La. R.S. 51:2247. Here, the LHRA defines a

> discriminatory practice in connection with public accommodations" as "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of . . . disability.

*Id.* 51:2232(5). Because no Louisiana court has applied the LHRA in this context, the Court again turns to the ADA and its caselaw as a reference.

The primary issue is whether the statute regulates only access to goods and services, or also the content of those goods and services—that is, whether the LHRA protects not only Cougle's access to various insurance offices, but also the relevant content of the policies offered in those offices. With respect to the ADA, the Fifth Circuit has addressed this issue directly, and its reasoning and holding dictates the outcome in this case. In *McNeil v. Time Insurance Company*, 205 F.3d 179 (5th Cir. 2000), the Fifth Circuit addressed whether an insurance company—which it assumed was a public accommodation—violated the ADA by offering a policy that limited the amount of coverage for AIDS. *Id.* The court held that while the ADA

prohibits an insurance company from denying disabled individuals access to insurance policies, it "does not, however, regulate the content of goods and services that are offered." *Id.* at 186. The court found that a plain reading of the statute's requirement that disabled individuals must have access to "the full and equal enjoyment" of a business's goods means only that they provide disabled individuals the same access to the goods and services of the business, which exist *a priori* and independently from any discrimination. *Id.* at 186-87. The court also listed a parade of horribles that could result from a broader reading of the statute, noting, for example, that if the statute were read as broadly as Cougle urges, bookstores would have to offer a copy of each book they sell in print in braille as well. *Id.* at 197. Applying the reasoning of the Fifth Circuit in *McNeil* demonstrates that Cougle cannot maintain a claim, as laws governing public accommodations regulate only access to goods and services, not the content of the goods and services themselves.

Cougle's attempts to distinguish *McNeil* are not persuasive. He first argues that the polices at issue allow for reformation, and suggests that the policy at issue in *McNeil* did not. But the lack of a reformation clause was in no way the basis for the Fifth Circuit's holding in *McNeil*. This argument also puts the cart in front of the horse—Cougle suggests that the policy should be

reformed *because* it violates Louisiana law, and therefore *McNeil* is not applicable. But here, the question *McNeil* addresses is whether the insurance policies violate public accommodations laws in the first instance.

Other courts are divided on this issue. But the bulk of the caselaw holds that, at least in this context, only the rights of access to goods and services are protected, not the content of the goods and services. *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) ("Title III does not address the terms of the polices that [an insurance company] sells".); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir. 1997) ("Title III does not govern the content of a long-term disability policy offered by an employer."). Of note, many of the cases relied on by plaintiff have been vacated, reversed, or called into doubt by later opinions. *See, e.g.*, *Johnson v. K-Mart Corp.*, 273 F.3d 1035 (11th Cir. 2001), *reh'g en banc granted, opinion vacated* (Dec. 19, 2001); *Chamber v. United of Omaha Life Ins. Co.*, 994 F. Supp. 1185 (N.D. Cal. 1998); *aff'd on other grounds*, 225 F.3d 1042 (9th Cir. 2000); *Attar v. UNUM Life Ins. Co. of Am.*, No. 3-96-397, 1998 WL 574885 (N.D. Tex. Aug. 31, 1998). These cases are therefore of limited persuasive value to the Court.

Cougle also suggests that the LHRA is necessarily broader than the ADA, and therefore the ADA is of limited value in this context. This

argument, too, is without merit. The LHRA provides that disabled individuals are entitled to "equal enjoyment" of goods and services in places of public accommodation. This language is perhaps even less expansive than that of the "full and equal enjoyment" language of the ADA, which was interpreted in *McNeil*. *See* 42 U.S.C. § 12182(a). The Court therefore finds the reasoning of *McNeil* and similar cases persuasive and equally applicable to the LHRA. And because Cougle was given equal access to goods and services, the Court must dismiss his claim under the LHRA. To the extent Cougle also asserts a claim for reformation of the polices so that they comply with the LHRA, this claim is also dismissed, as the Court finds the policies do not violate the LHRA.

### C.   Unfair Trade Practices

Plaintiff also alleges a claim under Louisiana's Unfair Trade Practices and Consumer Protection Law, La. R.S. 15:1401, *et seq*. Defendants contend that plaintiff cannot maintain a claim under LUTPA because unfair trade claims in the insurance context are excluded by the statute. LUTPA states: "The provisions of this Chapter shall not apply to . . . [a]ny . . . actions or transactions subject to the jurisdiction of . . . the insurance commissioner." La. R.S. 15:1406(1). Here, the insurance policies at issue fall under the jurisdiction of the insurance commissioner.

The Louisiana Insurance Code contains its own unfair trade practices provision, which states:

> No person shall engage in this state in any trade practice which is defined in this Part to be an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance, including unauthorized insurance as provided in R.S. 22:1902 et. seq.

LA. R.S. 22:1963. The Louisiana Insurance Code also gives the insurance commissioner the power to determine what is an unfair trade practice in the insurance industry. The Insurance Code states:

> The commissioner of insurance shall have power to examine and investigate the affairs of every person engaged in the business of insurance, including violations of 22:1902 et seq., in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this part.

La. R.S. 22:1967. This language makes clear that unfair trade practices in the insurance context fall within the authority of the commissioner of insurance, and no authority suggests otherwise.

Because unfair trade practices fall under the jurisdiction of the insurance commissioner, the plain language of LUTPA bars Cougle's unfair trade practices claim. *See S. Gen. Agency, Inc. v. Safeway Ins. Co. of La.*, 769 So. 2d 606, 608-09 (La. App. 3 Cir. 2000) (holding that where the insurance commissioner has the power to investigate unfair or deceptive acts

or practices, a plaintiff cannot maintain a claim under LUTPA). Therefore, as Cougle recognizes, his claim under LUTPA is barred.[20]  To the extent Cougle also asserts a claim for reformation of the policies to comply with LUPTA, that claim is similarly barred, as Cougle can bring no action under LUPTA.

Although Cougle recognizes that his claim under LUTPA is barred, he argues the Court should reform the insurance policies so that they do not violate the unfair trade provisions of the Louisiana Insurance Code. But there are two problems with Cougle's argument. First, there is no private right of action for a claim of unfair trade practice under the Louisiana Insurance Code, whether for damages or for reformation. The Louisiana Insurance Code allows for private actions for unfair trade practices for only a narrow set of enumerated claims, none of which is at issue here. *See Klein v. Am. Life & Cas. Co.*, 858 So. 2d 527, 533 (La. App. 1 Cir. 2003) ("No provision in this statutory scheme, however, creates a cause of action in favor of a person allegedly injured by unfair trade practices in the insurance business.").

---

[20]   R. Doc. 14 at 22 ("[P]laintiff concedes that his right to bring an action against an insurer for damages, penalties and attorneys fees for unfair or deceptive trade practices is precluded by the provisions of La. R.S. 22:1406 . . . .").

Second, the Louisiana insurance commissioner has the authority to investigate and determine whether an insurance company has engaged in unfair trade practices under the Louisiana Insurance Code. *See* La. R.S. 22:1967. Plaintiff has not alleged that the Louisiana insurance commissioner has found that these policies—or policies with similar provisions—are an unfair trade practice. Indeed, defendants assert that the insurance commissioner approved the relevant policies.[21] There is therefore no authority for the Court to find the policies invalid or to reform them.

Plaintiff cites *Rudloff v. Louisiana Health Services. & Indemnity. Co.*, 385 So. 2d 767, 771 (La. 1979), for the proposition that a court may reform an insurance policy to conform to the Louisiana Insurance Code. But the plaintiff in *Rudloff* did not bring suit under the unfair trade practices portion of the Louisiana Insurance Code. Rather he sued under a separate section that allowed for private rights of action. *Rudloff* provides no justification for reforming a policy when the commissioner of insurance has not found a violation. The Court therefore finds that Cougle's LUTPA claim is barred by the plain language of the statute, and that he has no private cause of action under the unfair trade practices sections of the Louisiana Insurance Code. These claims are therefore dismissed.

---

[21]     *See* R. Doc. 10-2 at 8; R. Doc. 12-1 at 4; *see also* R. Doc. 12-5.

### D. Breach of Contract

Plaintiff alleges a breach of contract claim against both Berkshire and Ameritas, stating that both companies "are in breach of their own respective contract terms by failing to pay all benefits to [Cougle] under the terms of the LTD policy."[22]  In order to survive a motion to dismiss, plaintiff must plausibly plead that (1) defendants undertook an obligation to perform; (2) defendants failed to perform the obligation; and (3) the failure to perform resulted in damages.  *See* La. Civ. Code art. 1994; *see also Denham Homes, L.L.C. v. Teche Federal Bank*, 182 So. 3d 108, 119 (La. App. 5 Cir. 2015).

Here, plaintiff cannot plausibly plead these elements.  Both insurance companies point to policy limitations stating that the companies would pay benefits for Cougle's disability for only twenty-four months.  The Berkshire policies state:

> The benefit period for a disability due to a mental and/or substance-related disorder is also subject to the following limitations: (a) monthly indemnity will not be paid for more than an aggregate total of 24 months during the entire time the policy is in force.[23]

---

[22]  R. Doc. 1-2 at 4 ¶ 16.

[23]  R. Doc. 10-4 at 25 (Policy Z1347920), 72 (Policy Z1347930).

Similarly, the Ameritas policy states that the "MNDA [Mental/Nervous Disorders, Alcoholism and/or Drug Abuse] Benefit Period" has a lifetime maximum of 24 months.[24]

Plaintiff does not contest that the twenty-four month limitation exists. Indeed, in his response to the motions to dismiss, plaintiff in no way addresses his breach of contract claim or the defendants' argument that this claim should be dismissed. Plaintiff has not plausibly pleaded that either company undertook an obligation to perform beyond paying benefits for twenty-four months. Each company paid benefits for twenty-four months, as required by the plain terms of the contract.[25] Defendants therefore do not breach the plain terms of the policies. And to the extent that Cougle's breach of contract claim was contingent upon reformation of the policies pursuant to Cougle's other arguments, this claim also fails, as the Court has found no cause to reform the policies. This claim is therefore dismissed.

### E.    Declaratory Judgment

Finally, Cougle brings a claim for declaratory judgment. Federal courts treat a state court declaratory action that is removed as invoking the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *See Hartford Fire Ins. Co v.*

---

[24]    R. Doc. 12-3 at 4.
[25]    R. Doc. 1-2 at 3 ¶¶ 9-10.

*Harleysville Mut. Ins. Co*, 736 F.3d 255, 261 n.3 (4th Cir. 2013). Here, Cougle seeks a declaration that the defendants' policies provide continuing coverage of plaintiff. As discussed above, the Court has found that neither insurance company breached the terms of their policies. Similarly, the Court has found no violation of law, and therefore no reason to reform the policies at issue. Cougle cannot maintain a claim for declaratory judgment, as it was rendered moot by the dismissal of Cougle's other claims. *See Barlett v. Overslaugh*, 169 F. Supp. 3d 99,110 (D.D.C. 2016) ("A court may dismiss as moot a claim for declaratory relief where the claim duplicates or is wholly subsumed by another claim that has been dismissed."). The Court therefore dismisses Cougle's declaratory judgment claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The complaint is dismissed WITH PREJUDICE.

New Orleans, Louisiana, this __13th__ day of December, 2019.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE